## 12199

### HASKELL v. PERRIN ET AL.

#### (138 S. E., 37)

BANKS AND BANKING—PURCHASER OF STOCK OF NATIONAL BANK IN RELIANCE ON REPRESENTATIONS OF CASHIER IS LIABLE FOR ASSESSMENT AFTER SUSPENSION OF BUSINESS (U. S. COMP. ST., § 9689).—Under U. S. Comp. St., § 9689, creating liability of stockholders of national banks to amount of stock therein in addition to amount invested in such stock, one purchasing stock from cashier of national bank three months before it suspended business in reliance on statements by such cashier that bank was in good condition, is liable for assessment under such section, since right of receiver to make assessment is entirely statutory, and purchaser, after closing of bank, cannot assert as against creditors, the right to rescind contract of stock subscription on ground of false representation.

Before GRIMBALL, J., Abbeville, Spring Term, 1926. Affirmed.

Action by L. C. Haskell, Jr., against Lewis Perrin and H. Marshall Kirkman, as receiver of the National Bank of Abbeville, wherein defendant last named asked for a

judgment against plaintiff.   Judgment for defendant last named, and plaintiff appeals.

The decree of Circuit Judge Wm. H. Grimball was as follows:

"As this matter comes before me on motion of the receiver of the National Bank of Abbeville, above named, as one of the defendants, for judgment on the pleadings, it will be first necessary to set forth the case made by the pleadings.

"Taking, for the purpose of this motion, all of the allegations of the complaint to be true, it seems that the plaintiff, on or about October 1, 1924, got his father to inquire of Mr. Lewis Perrin, the cashier of the National Bank of Abbeville, as to the condition of said bank and as to the value of its capital stock.  The cashier informed Mr. Haskell that the bank was in good condition and its capital stock worth 125 cents on the dollar.  Plaintiff's father told the cashier of the bank that he was making the inquiry for his son, who wished to invest some money in a sound investment paying 8 per cent. per annum, and was unwilling to pay more than par for the stock.  The cashier of the bank, knowing the purpose of the inquiry by plaintiff's father, deceived him into buying 10 shares of the capital stock of the bank; the said cashier knowing full well that the bank was hopelessly insolvent and the stock, in fact, worthless.  On January 7, 1925, the bank suspended business and defendant H. Marshall Kirkman was duly appointed receiver under the laws of the United States.

"On March 28, 1925, under the banking laws of the United States of America in such case made and provided, an assessment and requisition upon the shareholders of the bank was duly made for 100 per cent. of the capital stock standing in their respective names, including an assessment against plaintiff for $1,000 against the 10 shares of stock standing in his name.

"During the entire time since the purchase of the capital stock by plaintiff he has resided out of the state of South Carolina and has had no part in the management or control of the bank and no opportunity to know of its condition, and in purchasing the said 10 shares of capital stock relied entirely upon the statements of its cashier to his agent, Mr. L. C. Haskell, Sr., and believed said bank to be in a prosperous condition up to the time of its suspension of business on January 7, 1925.

"As soon as the bank suspended business, plaintiff undertook to find out from whom his stock was in fact purchased, but, due to the delay caused by the rules of the United States Treasury Department, it was not until May 4, 1925, that plaintiff ascertained that the stock was in fact transferred to him by Lewis Perrin, the cashier, individually. Plaintiff immediately tendered to Lewis Perrin the said capital stock, indorsed back to him, and also a dividend check issued by the bank on December 31, 1924, which had never been cashed because of the closing of the bank before same could be presented for payment, and notified the said Lewis Perrin and the said receiver that he repudiated the sale of the capital stock to him. This tender the said Lewis Perrin refused.

"Plaintiff alleges on information and belief that very little, if any, of the indebtedness of the bank was created after the time his name was entered on the list or registry of shareholders on or after October 3, 1924, and that the creditors of the bank did not rely on the fact that his name was on said list in extending said credit.

"Plaintiff prays that his name be stricken from the list of shareholders; that the receiver be enjoined from bringing suit against him for the assessment; that, said assessment be made against Lewis Perrin; and that Lewis Perrin be required to refund to plaintiff the amount paid for the stock, together with interest from October 3, 1924.

"The receiver prays that he have judgment against plaintiff in the sum of $1,000, together with legal interest thereon from May 4, 1925.

"While the natural inclination of any human Court would be to lend a sympathetic ear to plaintiff in this cause, a careful study of the decisions leads me to the unavoidable conclusion that the weight of authority is against him. U. S. Compiled Statutes, § 9689; U. S. Revised Statutes, § 5151; *Scott v. Latimer* (C. C. A.), 89 F., 843. *Scott v. Deweese*, 181 U. S., 202; 21 S. Ct., 585; 45 L. Ed., 822. *Pauly v. L. & T. Co.*, 165 U. S., 606; 17 S. Ct., 465; 41 L. Ed., 844. *Lantry v. Wallace* (C. C. A.), 97 F., 865. *Lantry v. Wallace*, 182 U. S., 536; 21 S. Ct., 878; 45 L. Ed., 1218. *Salter v. Williams* (D. C.), 219 F., 1017. *Page v. Jones* (C. C. A.), 7 F. (2d), 541.

"The right of the receiver of a national bank to make an assessment upon the stockholders of the bank is entirely statutory, and the statute giving that right, while formerly Section 5151 of the U. S. Revised Statutes, is now Section 9689 of the U. S. Compiled Statutes, being a part of the Federal Reserve Act of December 23, 1913. That statue provides:

" 'The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock.'

"The case of *Scott v. Latimer, supra,* was a case very similar to the one before me, and in that case the Circuit Court of Appeals of the Eighth Circuit rendered its opinion in 1898. In that case the Court said:

" 'The remaining grounds of defense relied on by plaintiff in error are based upon the assumed right to rescind the contract of subscription to the capital stock of the bank on the ground that such subscription was procured through false representations made to plaintiff in error touching the

actual pecuniary condition of the bank, and to avoid the effect of the acceptance by the plaintiff in error of the shares of stock issued to him on the ground that it was falsely represented to him that the whole amount of the proposed increase of $150,000 had been paid in. It will be borne in mind that this is not an action on behalf of the bank, based upon the original contract of subscription, but it is a suit wherein the creditors of the bank, represented by the receiver, are seeking to enforce the liability which the statute imposes upon those who occupy the position of stockholders in a national bank; and the question is whether it is open to the plaintiff in error, after the bank has become insolvent, and has been put into liquidation, to disclaim liability as a stockholder after having occupied that position for nearly four years. * * *

" 'It is thus made clear that the liability sought to be enforced in this case is not dependent upon the terms, or in fact upon the existence, of a contract of subscription to the capital stock of the bank, but it is a liability imposed by statute in favor of creditors, and it is a liability, as already said, which cannot be modified or released by any action on the part of the corporation or of the corporation and its stockholders. It is created for the benefit of the creditors, and no action on the part of the bank can estop the creditors from enforcing their rights in this particular. * * *

" 'In the answer filed in this case it is admitted that the plaintiff in error subscribed for 50 shares of stock, accepted the certificate issued therefor, received the dividends paid thereon, and thus for nearly four years appeared as a stockholder on the books of the bank; and certainly these facts entitle the creditors to enforce, as against the plaintiff in error, the liability which the statute imposes upon those persons who allow themselves to be held out as owners of the capital stock of a banking association. To escape this liability, the plaintiff in error pleads that he was induced to become a stockholder in the bank by reason of certain false

representations made to him by the officers of the bank with respect to the financial condition of the association, which were of such a character that he is now entitled to rescind the contract of subscription. Granting it to be true that, if a suit were now brought by the bank, or on its behalf, to enforce the contract of subscription aaginst the plaintiff in error, he might successfully defend the action on the ground that he had been induced to enter into the contract by false representations on the part of the bank, does it follow that this defense is available against the present action? This suit is not in favor of the bank, but is on behalf of the creditors, and is not to enforce any provision of the contract of subscription existing between the bank and the plaintiff in error, but is based upon the liability imposed by the statute, in favor of creditors, against those who knowingly assume the position of stockholders, and which may exist, although no contract of subscription was ever entered into between the bank and the holder of the capital shares. Even as between the bank and the plaintiff in error the contract of subscription was not void. It may have been voidable at the option of the plaintiff in error, but, until so avoided, it remained in force. When the bank closed its doors, and was put in liquidation, the plaintiff in error was in fact a shareholder, and so appeared upon the books of the association. While it may be true that his subscription to the capital stock had been obtained under such circumstances that he might, at his option, rescind the same, yet he had not done so when the bank failed, and, although he may not be chargeable with negligence in not earlier discovering the falsity of the representations made to him by the officers of the bank, yet the fact remains that when the association was put in liquidation, and when the rights of the creditors became fixed, he not only appeared upon the books of the bank as the owner of 50 shares of the capital stock, but in truth he had for nearly four years held the certificate issued

therefor, had received the dividends declared, and had exercised all the rights of a shareholder.

" 'These facts clearly bring the plaintiff in error within the liability imposed by the statute upon those who assume the appearance of stockholders in a national bank, and the liability thus created cannot be defeated by showing that the plaintiff in error was induced to accept the position of stockholder by false representations made by the officers of the bank. These officers do not represent the creditors, nor can the latter be made responsible for their acts. * * *

" 'In cases like the present, wherein it appears that for years a person has actually sustained the relation of a stockholder in a banking association, although under circumstances which may justify a rescission of the contract of stock subscription, as between the subscriber and the corporation, the just protection of creditors whose rights have intervened during this period requires it to be held that, as against creditors, the one who held the position of stockholder cannot escape the statutory liability by rescinding the subscription contract after the bank has been put into liquidation.' ·

"The case of *Scott v. Latimer* went to the Supreme Court of the United States, and was there affirmed. *Scott v. Deweese,* 181 U. S., 202; 21 S. Ct.; 585; 45 L. Ed., 822. In its opinion that Court said:

" 'The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection but to give confidence to all dealings with national banks in respect of their contracts, debts and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizies, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of Section 5151, if at the time the rights

of creditors accrued he occupied and was accorded the rights appertaining to that position.'

"In the case of *Lantry v. Wallace,* 97 F., 865, the Circuit Court of Appeals for the Eighth Circuit had before it the case of a stockholder in a national bank who had become such eight months before the bank failed, and who set up the same defense to the receiver's suit for assessment under the statute as the plaintiff in the suit now before me has set up in his complaint. In its opinion the Court states that 'from the very nature of the business in which banks are engaged, it must be presumed' that during the eight months the bank 'incurred large obligations to depositors and to other creditors.' The Court sustained a demurrer to the answer.

"In the case of *Salter v. Williams,* 219 F., 1017, the United States District Court, District of New Jersey, in considering a case similar to the one before me, said:

" 'Plaintiff avers that he was a purchaser, that he held for several months, that he was a shareholder at the time of the insolvency of the bank, and that he never made any complaint until after the appointment of a receiver. The rights of the creditors, however, intervened when the bank suspended, and it is now too late for him to come into Court and claim to be relieved upon the ground of misrepresentation and deceit by any person who was an officer of the bank at the time of the purchase of his shares.'

"Plaintiff in the case before me relies largely upon the cases of *Stufflebeam v. De Lashmutt* (C. C.), 101 F., 367, and *Ryan v. Bank* (C. C.), 206 F., 452.

"Admitting that these two cases are some authority for plaintiff's position, I am of the opinion that their authority is weak for the following reasons:

"*Stufflebeam v. De Lashmutt* is merely the individual opinion of one United States District Judge. And, in addition to that fact, the District Judge apparently concedes that the weight of the decisions is against his written opin-

ion. 'My inclination,' says he, 'is to follow in the way which seems to be pointed out by the cases cited, and yet, upon the facts so far appearing, this would probably result in great injustice to the defendant.' The defendant in that case was in the same position as the plaintiff in the present case.

"And in *Ryan v. Bank,* the Circuit Court of Appeals for the Second Circuit, in overruling a demurrer to a bill of complaint similar to the bill of complaint in the present case, said:

" 'In thus deciding, however, we are not to be understood as intimating any opinion as to whether complainant could be discharged from his liability as a shareholder if the facts stated in his bill were fully proved.'

"In the light of the foregoing, I am of the opinion that the receiver is entitled to the judgment he asks for upon the pleadings. If the plaintiff had commenced his suit before the bank closed its doors, granting the facts to be as alleged by him, he would have been entitled to the relief he asks for. But he is too late now as against the receiver who represents the creditors. This liability is a statutory one for their protection, and the policy of the Courts is to carefully guard their interests.

"It is true that plaintiff alleges that he is informed and believes that 'very little, if any,' of the indebtedness of the bank was created after October 3, 1924. But he was a stockholder for three months before the bank closed its doors. And I am of the opinion, as stated in *Lantry v. Wallace,* that from the very nature of the business in which banks are engaged it must be presumed that during that time the bank incurred large obligations to depositors and to other creditors. This is well stated by the District Judge in *Stufflebeam v. De Lashmutt,* as follows:

" 'There can be no appreciable interval of time between the making of a contract by which shares are acquired and its rescission without credit being given in the ordinary

course of business. If the company is a going concern, there will necessarily be such credit to cut off the luckless shareholder's right to relief from liability unless the contract is repudiated as soon as made.'

"It is also true that plaintiff did not receive during his ownership of the stock any dividends in cash. But a dividend check was issued to him on December 31, 1924, and plaintiff gives as his reason for not receiving the money represented by this check that 'the said bank closed before said check could be presented.' Plaintiff had for three months the rights and privileges of his relationship as stockholder in a national bank, including the choice of an enhanced value of his holdings. And now that fortune frowns, and the chances turn against him, as is said in *Scott v. Abbott* (C. C. A.), 160 F., 573, it is too late to assert, as against creditors of the bank, the right to rescind his contract of stock subscription on the ground of false representations after a state of insolvency has supervened, and after proceedings to wind up the corporation for the benefit of creditors have been instituted.

'My opinion in this matter is based entirely on the decisions as I have found them, and on the weight of those decisions as I read them. In conclusion, however, I shall mention one phase of the case which to me is interesting, and which is entirely outside of the decided cases. The soundness of the financial condition of a bank has been often said to be as precious as a woman's honor. And, granting that a bank in active operation has become, unknown to the business world, impaired in its financial responsibility, what officer in that bank is expected to admit that fact to one who inquires about the value of the bank's capital stock? The result of such an admission by one of the officials of the bank would inevitably result in a run on the bank, probably followed by the closing of its doors, and this especially in view of the criminal statute making

it a felony to receive deposits knowing· that the bank was insolvent.

"If I were interested in buying bank stock, I believe that the last person of whom I would inquire as to the condition of any particular bank' would be the cashier or president of that bank. I would know that their answer would of necessity be that the bank was prosperous, whether it was or not.

"It is ordered, adjudged, and decreed that H. Marshall Kirkman, as receiver of the National Bank of Abbeville, do have judgment against the plaintiff, L. C. Haskell, Jr., in the sum of $1,000.00, together with interest thereon at the rate of 7 per centum per annum from the 4th day of May, 1925."

*Messrs. Mays & Featherstone,* for appellant, cite: *Action maintainable:* Sec. 5151, U. S. Rev. Stat., Sec. 9689, U. S. Comp. Stat. *"Stockholder":* 250 U. S., 295; 63 L. Ed., 989; 3 A. L. R., 1038. *Liability limited:* 181 U. S., 202, 213; 21 C. J., 1208; 202 U. S., 510, 530; 101 Fed., 367; 206 Fed., 462; 182 U. S., 536, 550. *Cases distinguished:* 89 Fed., 843; 181 U. S., 204.

*Messrs. Grier, Park & McDonald,* for respondents, cite: *Liability imposed by Federal statute:* 181 U. S., 209; 45 L. Ed., 828; 224 Fed., 430; 102 U. S., 549; 45 L. Ed., 1225; 133 U. S., 138; 33 L. Ed., 537; 219 Fed., 1017; 2 Fed. (2nd), 482. *Cited generally:* 182 U. S., 589; 21 S. Ct., 878; 45 L. Ed., 1218; 224 Fed., 429; 140 C. C. A., 123; 89 Fed., 843; 33 C. C. A., 1; 181 U. S., 202; 21 S. Ct., 585; 45 L. Ed., 822. *Deception does not relieve shareholder of statutory liability:* 7 Fed. (2nd), 544; 148 N. E., 609; 41 A. L. R., 658.

May 4, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The conclusions of his Honor, Circuit Judge Grimball, in this cause are satisfactory to this Court. His decree, which will be reported in full, is hereby affirmed in all respects.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN disqualified.